FILED
CLERK
11:40 am, Aug 08, 2019
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
SALVATORE GUADAGNA, individually and
on behalf of all persons similarly situated,

                 Plaintiff,

        -against-

HOWARD ZUCKER, as Commissioner of the
New York State Department of Health,

                 Defendant.
----------------------------------------------------------X

**MEMORANDUM OF
DECISION & ORDER**
2:17-cv-03397 (ADS)(AKT)

**APPEARANCES:**

**New York Legal Assistance Group**
*Attorneys for the Plaintiff*
7 Hanover Square 18th Floor
New York, NY 10004
    By:    Benjamin Wait Taylor, Esq.,
             Elizabeth A. Jois, Esq.,
             Jane Greengold Stevens, Esq.,
             Julia Grossman Russell, Esq., Of Counsel.

**Office of the New York State Attorney General**
*Attorneys for the Defendant*
200 Old Country Road Suite 460
Mineola, NY 11501
    By:    Dorothy O. Nese, Esq., Deputy Assistant Attorney General.

**SPATT, District Judge**:

       Plaintiff Salvatore Guadagna ("Guadagna" or the "Plaintiff") commenced this putative class action against the defendant Howard Zucker ("Zucker," or the "Commissioner"), as Commissioner of the New York State Department of Health ("DOH"), alleging that the Defendant violated the Medicaid Act 42 U.S.C. § 1396 *et seq.*; the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12131 *et seq.*; Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; and the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution.

1

On August 2, 2018, the Court granted a motion by the Defendant to dismiss two previously-named plaintiffs pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P." or "Rule") 12(b)(1) and Rule 12(b)(6) and denied the motion with regard to the Plaintiff. ECF 71 (the "Order"). In the Order, the Court also denied the Plaintiff's motion for class certification pursuant to Rule 23 without prejudice with leave to renew.

Presently before the Court is the Plaintiff's renewed motion for class certification. For the following reasons, the Court grants the Plaintiff's motion.

## I. BACKGROUND.

### A. THE FACTUAL BACKGROUND.

The Court will only provide a brief recounting of the facts necessary for resolving the current motion. For a more thorough recitation of the facts and regulatory background, the Court refers the parties to the Order.

Medicaid is a program designed to provide medical assistance to needy persons, and is operated jointly by the federal government and the states. The Defendant, as commissioner of the New York State Department of Health, administers Medicaid in New York State. Initially, Medicaid recipients in New York primarily received long-term care services from agencies that contracted directly with their local Social Services districts on a fee-for-service basis. In 2012, the Defendant began requiring certain recipients of Medicaid-funded long-term care to enroll in privately-owned managed long-term care plans ("MLTCPs").

The Plaintiff is a Medicaid and Medicare recipient and former enrollee of the MLTCP GuildNet, Inc. ("GuildNet"). After receiving letters indicating that GuildNet would cease offering long-term care services in Suffolk, Nassau, and Westchester counties, the Plaintiff enrolled in

another MLTCP, which provided him with less care than he received under GuildNet and without affording him notice of a right to a fair hearing with aid continuing.

**B. THE PROCEDURAL BACKGROUND.**

On June 6, 2017, former plaintiffs Gemma Samele, Marie Turano, and Leonard Turano commenced this action by filing the Complaint. The Complaint alleged violations of the Medicaid Act, the Due Process Clause of the Fourteenth Amendment to the United States Constitution, the ADA, and the Rehabilitation Act. The Complaint sought an order certifying the action as a class action; declaratory and injunctive relief; costs; and attorney's fees.

On August 3, 2017, the Defendant filed an answer to the Complaint.

On August 31, 2017, the original plaintiffs filed a motion to amend the complaint pursuant to Rule 15 to add additional plaintiffs and additional facts, which the Court granted on November 4, 2017.

On November 20, 2017, the original plaintiffs filed an amended complaint adding Guadagna and Selma Roher as plaintiffs. The Amended Complaint alleged the same violations as the original complaint, and sought the same types of relief.

On November 21, 2017, Marie Turano and Leonard Turano voluntarily dismissed their claims against the Defendant pursuant to Rule 41(a)(1)(A)(ii), and they were removed as Plaintiffs from the action.

On December 1, 2017, the then-plaintiffs filed a motion pursuant to Rule 23 seeking certification of a class consisting of the 4,000 Medicaid recipients who received home care services through GuildNet in Westchester, Suffolk, and Nassau counties as of March 1, 2017.

On December 21, 2017, the Defendant filed a motion to dismiss for lack of jurisdiction pursuant to Rules 12(b)(1) and 12(b)(6).

On August 2, 2018, the Court granted the Defendant's motion to dismiss with regard to Samele and Roher, but denied the motion with regard to Guadagna, who is now the only remaining plaintiff. The Court held that "only those individuals who transferred from GuildNet to another MLTCP and received less care have standing." ECF 71 at 31. Samele and Roher lacked standing because they brought their claims before transitioning to another MLTCP, and thus suffered no injury in fact. Guadagna, on the other hand, suffered an injury in fact when he enrolled in an alternative MLTCP who provided him less care than GuildNet without notice of a right to a fair hearing with aid continuing.

Accordingly, the Court denied the then-plaintiffs' motion for class certification without prejudice. The Court found the proposed class to be overbroad because it contained all GuildNet enrollees, regardless of whether they transferred to another MLTCP and received less care. Thus, the Court provided Guadagna leave to refile the motion with a revised class definition after collecting information regarding the number of individuals who switched plans and received a lower standard of care without adequate notice.

On November 19, 2018, the Plaintiff filed a renewed motion for class certification with the following revised class definition:

> All Medicaid recipients who were enrolled in the GuildNet MLTCP in Suffolk, Nassau, or Westchester County as of March 1, 2017 and who suffered reductions in care without constitutionally and statutorily mandated prior notice and opportunity to be heard when they transferred to new MLTCPs as a result of GuildNet's closure in their counties of residence.

ECF 81.

## II. DISCUSSION

**A. THE LEGAL STANDARD.**

Before certifying a class, the Court must determine that the party seeking certification has satisfied the four prerequisites of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. *See, e.g.*, *Marisol A. v. Giuliani*, 126 F.3d 372, 375 (2d Cir. 1997); *Comer v. Cisneros*, 37 F.3d 775, 796 (2d Cir. 1994). The Court must find, more specifically, that: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a).

The Court must also find that the party qualifies under one of the three sets of criteria set forth in Rule 23(b)(1), (2), or (3). *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *Comer*, 37 F.3d at 796. Here, the Plaintiff seeks to certify a class under Rule 23(b)(2), which permits class certification if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

"The Second Circuit has emphasized that Rule 23 should be 'given liberal rather than restrictive construction,' and 'it seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification.'" *Gortat v. Capala Bros.*, 257 F.R.D. 353, 361 (E.D.N.Y. 2009) (quoting *Marisol A.*, 126 F.3d at 377; *Cortigiano v. Oceanview Manor Home for Adults*, 227 F.R.D. 194, 203 (E.D.N.Y. 2005)); *Massey v. On-Site Manager, Inc.*, 285 F.R.D. 239, 244 (E.D.N.Y. 2012); *see also Morangelli v. Chemed Corp.*, 275 F.R.D. 99, 104 (E.D.N.Y. 2011) ("The Second Circuit ... has shown a preference for granting rather than denying

5

class certification.") (quotations omitted). "[I]f there is to be an error made, let it be in favor and not against the maintenance of the class action, for it is always subject to modification should later developments during the course of the trial so require." *Shabazz v. Morgan Funding Corp.*, 269 F.R.D. 245, 249 (S.D.N.Y. 2010) (quoting *Green v. Wolf Corp.*, 406 F.2d 291, 298 (2d Cir. 1968)).

At the same time, the Court must conduct a "rigorous analysis" to determine whether the relevant requirements of Rule 23 have been met. *See Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). The burden of persuasion lies with the party seeking certification, in this case the Plaintiff. *See, e.g.*, *Bishop v. New York City Dep't of Hous. Pres. and Dev.*, 141 F.R.D. 229, 234 (S.D.N.Y.1992). In deciding whether the requirements of Rule 23 have been met, the Court may examine not only the pleadings but also the evidentiary record, including any affidavits and results of discovery. *See, e.g.*, *Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 571 (2d Cir. 1982); *Chateau de Ville Prods. v. Tams–Witmark Music Library, Inc.*, 586 F.2d 962, 966 (2d Cir. 1978). Hence, the issue on this motion is whether the Plaintiff met his burden of establishing, on the basis of the pleadings, affidavits, and the results of discovery, that the four prerequisites of Rule 23(a) have been met, and that the proposed class can be maintained under Rule 23(b)(3). *See Dajour B. v. City of New York*, No. 00-cv-2044, 2001 WL 1173504, at *4 (S.D.N.Y. Oct. 3, 2001); *Krueger v. New York Tel. Co.*, 163 F.R.D. 433, 438 (S.D.N.Y. 1995).

**B. AS TO THE RELEVANCE OF THE MERITS ISSUE.**

The Defendant devotes the vast majority of his opposition to class certification to asserting that the Court should deny the Plaintiff's motion due to the failure of the Plaintiff's claims as a matter of law. The Defendant's argument comes in two forms. First, the Defendant contends that there is no basis in law for the Plaintiff's theory, because no statutory or constitutional mandate requires the notice or opportunity for a hearing the Plaintiff seeks. Second, the Defendant argues

6

that it already provided the relief sought by the Plaintiff through the Transition Policy, as well as various other measures that supposedly restored putative class members to the level of care received before GuildNet's closure. The Court finds that these arguments are irrelevant to the propriety of certifying the proposed class.

It is beyond well-settled that a motion for class certification is not a vehicle for deciding the merits of the case. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *Sirota*, 673 F.2d at 570–71 ("*Eisen* held that Fed.R.Civ.P. 23 gave a district court no authority to hold a precertification hearing on the merits in order to determine whether a suit may be maintained as a class action."); *Rodolico v. Unisys Corp.*, 199 F.R.D. 468, 473 (E.D.N.Y. 2001) (Spatt, J.) ("The Court is mindful that a motion for class certification is not an occasion for the Court to examine the merits of a case.").

The dispositive question is not whether the Plaintiff stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 have been met. *See Eisen*, 417 U.S. at 178 (citing *Miller v. Mackey Int'l*, 452 F.2d 424, 427 (5th Cir. 1971) (Wisdom, J.)). "It would be both unwise and unfair to reach the merits of a dispute in this context: resolution of merits issues at this stage might allow some parties seeking certification to secure the benefits of the class action mechanism without first having met its requirements, and might subject some parties to adverse merits rulings without the benefit of the rules and procedural safeguards that traditionally apply in civil trials." *Katz v. Image Innovations Holdings, Inc.*, No. 06-cv-3707, 2010 WL 2926196, at *2 (S.D.N.Y. July 22, 2010) (citing *Eisen*, 417 U.S at 177–78)

Of course, there are occasions where the Court must address issues implicating the merits in order to resolve whether the proposed class conforms with the requirements of Rule 23. However, this reality is not an invitation for courts to decide the case through a class certification

motion. *See Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466, 133 S. Ct. 1184, 1194–95, 185 L. Ed. 2d 308 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.").

Therefore, the Court will address the Defendant's merits arguments only to the extent they overlap with questions pertinent to Rule 23. But it will not deny the Plaintiff's motion simply because the Defendant believes the Plaintiff's theory "fail[s] as a matter of law." ECF 96 at 6. The Court already authorized summary judgment motion practice, in which the parties are proceeding. The Court will address the legal viability of the Plaintiff's claims when resolving those motions.

**C. AS TO THE RULE 23(A) FACTORS.**

The Court finds that the proposed class satisfies the Rule 23(a) factors.

1. **Numerosity**

Rule 23(a)(1) requires the movant to show that "the class is so numerous that joinder of all members is impracticable." *See* Fed.R.Civ.P. 23(a)(1). "The numerosity requirement in Rule 23(a)(1) does not mandate that joinder of all parties be impossible—only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, LLC*, 504 F.3d 229, 244–45 (2d Cir. 2007). "[N]umerosity is presumed where a putative class has forty or more members." *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011) (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)).

According to the Plaintiff, at least 550 GuildNet enrollees transferred to a new MLTCP and suffered reductions in care after learning of GuildNet's impending closure. As support, he

cites a chart produced by the Defendant detailing the type and level of long-term care received by individuals who changed MLTCPs between April 1, 2017 and October 1, 2017. The chart shows the services received from GuildNet immediately before transferring to the new MLTCP and the services received immediately upon transfer. The Plaintiff contends that none of these individuals received adequate notice because the DOH treated all of them as if they were voluntarily transferring to a new plan. In the Court's view, this evidence suffices to establish numerosity.

The Defendant asserts that the Court should look beyond the numbers put forward by the Plaintiff and determine whether the individuals identified by the Plaintiff continued to receive fewer services after the Defendant implemented the transition policy. According to the Defendant, taking this approach would reveal "whether any of the potential putative plaintiffs still possess viable claims or whether any such claims already are moot," potentially significantly diminishing the size of the putative class. ECF 96 at 15.

However, the Defendant's argument misstates the burden the Plaintiff must carry to demonstrate numerosity. In essence, the Defendant is asking the Court to decide of the merits of each putative class member's claim, and then determine whether the class is sufficiently numerous based on the number of surviving claims. However, the relevant question is not how many proposed class members possess *viable* claims, but rather whether the number of potential plaintiffs with analogous claims is sufficiently large that it would be unduly burdensome to make each individually join the lawsuit. Thus the fact that the putative class members' claims might fail is not relevant. *See Spinner v. City of New York*, No. 01-cv-2715, 2003 WL 23648356, at *3 (E.D.N.Y. Oct. 10, 2003) (rejecting numerosity argument that "essentially asks [the court] to decide the merits of plaintiffs' claims, which is not appropriate at this stage," by inquiring into the circumstances of each class putative class members' case); *Ray M. by Juana D. v. Bd. of Educ. of*

9

*City Sch. Dist. of City of New York*, 884 F. Supp. 696, 699 (E.D.N.Y. 1995) ("Defendants also argue that no named plaintiff has suffered harm encompassed by the Proficiency Evaluation or Proficiency Services Categories. But at least two named plaintiffs allege that they have suffered harm of these types. Defendants' argument goes to the merits of plaintiffs' claims and is not properly before the court at this time."). Rule 23(a)(1) contemplates that after a certain point a class of claimants becomes large enough that it would be preferable to decide the merits of their claims all at once, rather than dealing with the inefficiencies inherent in prosecuting each potential claim individually.

Therefore, the Court finds the Plaintiff satisfied his burden of demonstrating numerosity.

**2. Commonality**

Under Rule 23(a)(2), there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A question is common if it is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation ("In re Payment Card")*, 330 F.R.D. 11, 52 (E.D.N.Y. 2019) (citing *Walmart Stores v. Dukes*, 564 U.S. 338, 350 (2011)). "[I]t is not enough to raise questions at such a high level of generality that they become common to the class." *Tart v. Lions Gate Entm't Corp.*, No. 14-cv-8004, 2015 WL 5945846, at *2 (S.D.N.Y. Oct. 13, 2015) (citing *Dukes*, 564 U.S. at 350). The Plaintiff must demonstrate "the capacity of a classwide proceeding to generate common answers apt to drive the resolution" of the case. *In re Payment Card*, 330 F.R.D. at 52 (quoting *Dukes*, 564 U.S. at 350).

"'Even a single common legal or factual question will suffice' to prove commonality." *Id.* (quoting *Dukes*, 564 U.S. at 357). "Where the question of law involves standardized conduct of

the defendant to the plaintiff, a common nucleus of operative fact is typically presented and the commonality requirement is usually met." *Lewis v. Alert Ambulette Serv. Corp.*, No. 11-cv-442, 2012 WL 170049, at *10 (E.D.N.Y. Jan. 19, 2012) (alterations adopted) (citation and quotation marks omitted). Accordingly, by their very nature, injunctive actions are apt to satisfy Rule 23(a)(2) because the relief that they seek is applicable to the class as a whole. *M.F. by & through Ferrer v. New York City Dep't of Educ.*, No. 18-cv-6109, 2019 WL 2511874, at *4 (E.D.N.Y. June 18, 2019).

Here, the following common question exists capable of class-wide resolution—whether a statutory or constitutional mandate existed requiring the Defendant to compel MLTCPs who accepted former GuildNet enrollees to provide notice and fair hearing rights. The Plaintiff alleges that the DOH knew of GuildNet's intention to close and was thus required by the Medicaid statute and the Constitution to adopt remedial measures protecting those rights, whereas the Defendant alleges that no legal basis exists for demanding additional action by the DOH. Resolving this legal dispute will conclusively resolve the Defendant's liability to the class as a whole, favoring certification. *See Cruz v. Zucker*, 195 F. Supp. 3d 554, 565–66 (S.D.N.Y. 2016) (finding commonality where plaintiffs "brought a facial challenge against a regulation that unequivocally bans all cosmetic procedures" because the "ban [was] the 'glue' holding together plaintiffs' claims as required by *Dukes*: if the ban violates the federal law, each of the claims brought by members of the Cosmetic Subclass will be resolved 'in one stroke.'").

To supposedly show the absence of a common question, the Defendant shifts the focus to the providers who received the members of the putative class. GuildNet enrollees transferred to numerous different managed care organizations, including 49 MLTCPs. According to the Defendant, the new providers made individualized determinations of the level of service to provide

11

transferred enrollees. In doing so, the provider assessed each enrollee's particularized infirmities, abilities, and home environments and then designed a plan of care tailored to that enrollee's unique needs. The Defendant thus believes that hundreds of distinct questions regarding the circumstances of each potential class member exist, rather than a single class-wide question.

However, the Defendant's argument mischaracterizes the nature of the dispute. The Plaintiff is not challenging the assessments of the providers who received former GuildNet enrollees. Instead, the Plaintiff questions the lawfulness of the DOH's overarching policy regarding the transfer of enrollees from GuildNet to those providers. If the Medicaid statute and/or Constitution obligated the DOH to impose notice and fair hearing requirements on receiving providers, then the Defendant's failure to implement a policy to that affect violated the rights of the entire class. If, on the other hand, no such statutory or constitutional mandate existed, then the putative class's claims fail as a matter of the law. Either way, the Court can generate a common answer that will drive the resolution of the case without second-guessing the assessments of the post-GuildNet providers. *See M.G. v. New York City Dep't of Educ.*, 162 F. Supp. 3d 216, 236 (S.D.N.Y. 2016) (rejecting argument that no commonality existed because government program was "individualized to each student's needs" where plaintiffs sought "injunctive relief from limitations that the [regulation] places on students' access to Related Services overall—a matter that can and should be resolved on a class-wide basis").

As a result, the facts of this case are distinguishable from *Taylor v. Zucker*, No. 14-cv-05317, 2015 WL 4560739 (S.D.N.Y. July 27, 2015), the only case cited by the Defendant to support his position. The plaintiffs in *Taylor* challenged the Defendant's statewide administration of the Medicaid program, claiming the DOH possessed a custom and practice of reducing and terminating home services for Medicaid recipients without timely and adequate notice and without

any change in plaintiffs' conditions which would merit such reduction or termination. *Id.* at *1. However, the actual decisionmakers behind the reductions and terminations were the 68 managed care programs across the state that the proposed class members enrolled in. *Id.* at *9. Thus no common question existed because the plaintiffs "fail[ed]to provide 'glue' connecting the *reason* for each enrollee's reduction or termination of care together." *Id.*

Unlike the claims in *Taylor*, the Plaintiff does not challenge a statewide custom or practice of the DOH, instead focusing on the specific behaviors of the Defendant at the time of GuildNet's closure. He is not claiming that the Defendant should be responsible for the actions of the MLTCPs that received former GuildNet enrollees. Rather, he faults the Defendant for failing to implement a uniform policy that protects the rights of enrollees transferring from a closing plan. Permitting class certification in this case thus escapes the primary concern identified by the court in *Taylor*. Whereas the *Taylor* plaintiffs wanted to represent a class encompassing enrollees in different cities, with different insurance policies, governed by different rules, and who were not uniformly harmed by any particular action of the Defendant, *See id.* at *10–11, all potential members of the proposed class here enrolled in the same MLTCP and were purportedly harmed by the same decision. In other words, the Plaintiff provided the "glue" supposedly absent from the theory advanced in *Taylor*.

*Strouchler v. Shah*, 891 F. Supp. 2d 504 (S.D.N.Y. 2012) appears to be a significantly more apt comparison. The court found the facts favored a finding of commonality in a case regarding the DOH's implementation of Medicaid even though "the facts of each class member's diagnoses and evaluations are unique to that individual" in light of "facts regarding the centralization of the program." *Id.* at 518. The court explained that "[a]ll putative class members [were] recipients of medical care administered by the City pursuant to Medicaid; their eligibility for the care [was]

13

determined by a set of doctors working in one department; [and] that department [was] run by one individual." *Id.* Similarly, this lawsuit challenges the Defendant's actions regarding the closure of a single MLTCP. The Defendant disputes the existence of any such obligation, but that dispute revolves around a centralized set of facts suitable for classwide resolution.

Therefore, the Court finds the Plaintiff satisfied his burden of demonstrating commonality.

**3. Typicality**

"The typicality prong of Rule 23(a)(3) requires that 'the claims or defenses of the representative parties [be] typical of the claims or defenses of the class.'" *In re Payment Card*, 330 F.R.D. at 53 (quoting Fed. R. Civ. P. 23(a)(3)). The typicality requirement "is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Id.* (quoting *Shahriar*, 659 F.3d at 252). "'Since the claims only need to share the same essential characteristics, and need not be identical, the typicality requirement is not highly demanding.'" *Id.* (quoting *In re Platinum & Palladium Commodities Litig.*, No. 10-cv-3617, 2014 WL 3500655, at *9 (S.D.N.Y. July 15, 2014)); *see In re NASDAQ Mkt.-Makers Antitrust Litig.*, 169 F.R.D. 493, 509 (S.D.N.Y. 1996) (collecting cases). "[M]inor variations in the fact patterns underlying individual claims" do not defeat typicality. *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993). However, "class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000) (quoting *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990), *abrogated on other grounds by Microsoft Corp. v. Baker*, ___ U.S. ___, 137 S.Ct. 1702, 198 L.Ed.2d 132 (2017)).

Here, the Plaintiff and the putative class members were subject to the same course of conduct by the DOH, and will proceed on virtually the same legal theories, satisfying the typicality inquiry. *See Lovely H. v. Eggleston*, 235 F.R.D. 248, 256 (S.D.N.Y. 2006) (finding typicality established where both named plaintiffs and putative class members were disabled welfare recipients who all experienced "involuntary reassignment" to three centralized offices for the purpose of receiving welfare related services, which plaintiffs claim "violated their rights to be free from disability-based discrimination and denied them due process of law"); *Hilton v. Wright*, 235 F.R.D. 40, 52 (N.D.N.Y. 2006) (typicality was met where "the claims of the representative parties and the members of the prospective class all center around defendants' application" of a single policy).

The Defendant objects that GuildNet's conduct cannot be imputed to the DOH and that the Court has already found that the DOH provided adequate notice. Putting aside the fact that these arguments are merely another failed attempt to litigate the merits of the Plaintiff's case, they are applicable to the putative class as a whole, and not just to the Plaintiff. As a result, they fail to show that the Plaintiff is subject to unique defenses that would make his claims atypical of the proposed class. *See Ashe v. Bd. of Elections in City of New York*, 124 F.R.D. 45, 49 (E.D.N.Y. 1989) (rejecting typicality argument where plaintiff alleged the defendant "discriminated in the same general fashion against plaintiff and against other class members" because "[t]he fact that defendants contest those claims is irrelevant for class certification purposes").

Therefore, the Court finds the Plaintiff satisfied his burden of demonstrating typicality.

**4. Adequacy**

"'Named plaintiffs must fairly and adequately represent the interests of the class." *Lewis*, 2012 WL 170049, at *11 (citing Fed. R. Civ. P. 23(a)(4)). "Determination of adequacy typically

entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'" *In re Payment Card*, 330 F.R.D. at 30 (quoting *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007)). As to the first inquiry, "[o]nly a fundamental conflict will defeat the adequacy of representation requirement." *Lewis*, 2012 WL 170049, at *11 (citation omitted).

No identifiable actual or potential conflicts exist between the Plaintiff and other members of the putative class. All proposed class members suffered reduction of Medicaid services without receiving adequate notice. Also, the final relief sought by the Plaintiff on behalf of the proposed class is the same relief that he seeks for himself, namely, an order compelling DOH to restore to former GuildNet enrollees the level of care that they were previously receiving from GuildNet, until and unless they receive an adequate and timely notice and the opportunity to contest any reduction. These facts clearly establish his adequacy to represent the proposed class. *See Marisol A.*, 126 F.3d at 378 (adequacy requirement met where "[p]laintiffs seek broad based relief which would require the child welfare system to dramatically improve the quality of all of its services, including proper case management [because] [i]n this regard, the interests of the class members are identical"); *Shakhnes ex rel. Shakhnes v. Eggleston*, 740 F. Supp. 2d 602, 627 (S.D.N.Y. 2010) (adequacy met where "[p]laintiffs and class members alike [were] people who depend on state social services for the basic needs of their lives; they [had] an identity of interest in the way those services [were] managed and distributed" and thus "all would benefit from improved procedures for rendering decisions after fair hearings").

The Defendant's only objection—that awarding an injunction would be improper—relates solely to the merits of the relief requested by the class writ large. It has no bearing on the capacity

of the Plaintiff to adequately represent the interests of other class members. *See Gelb v. Am. Tel. & Tel. Co.*, 150 F.R.D. 76, 77 n.1 (S.D.N.Y. 1993) ("The Court need not decide at this time whether the injunctive remedy sought by Plaintiff is improper or moot.")

Therefore, the Court finds the Plaintiff satisfied his burden of demonstrating adequacy.

**D. AS TO RULE 23(B)(2).**

Rule 23(b)(2) permits certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Actions for injunctive relief will satisfy the requirements of Rule 23(b)(2) if the injunctive relief sought will benefit the entire class. *See Nicholson v. Williams*, 205 F.R.D. 92, 99 (E.D.N.Y. 2001). "It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant." *Dukes*, 564 U.S. at 360.

The Defendant's actions apply equally to every member of the proposed class—they all lost care upon transfer to new plans without adequate notice or a pre-reduction hearing. The Plaintiff seeks a declaration that the Defendant violated the proposed class's statutory and constitutional rights and an injunction mandating Defendant Zucker to order MLTCPs to provide class members with the level of care they previously received from GuildNet and to continue those services until and unless class members receive adequate notice and an opportunity to be heard.

Both forms of relief will benefit each member of the class equally, bringing the putative class clearly within the ambit of Rule 23(b)(2). *See Shakhnes*, 740 F. Supp. 2d at 628 ("[C]ivil rights actions . . . alleging systemic administrative failures of government entities [ ] are frequently granted class action status under Rule 23(b)(2)."); *Strouchler v. Shah*, 286 F.R.D. 244, 248 (S.D.N.Y. 2012) (certifying Rule 23(b)(2) class of home care service recipients who alleged DOH

improperly sought to terminate their split–shift care in violation of federal and state law); *Lovely H.*, 235 F.R.D. at 257 (approving a Rule 23(b)(2) class of city welfare recipients with disabilities, challenging the city's decision to involuntarily transfer all class members to different offices to receive welfare-related services); *Mayer v. Wing*, 922 F. Supp. 902, 908 (S.D.N.Y. 1996) (certifying a class of plaintiffs whose home health care services had been reduced or terminated by the state and/or city).

Therefore, the Court finds the proposed class meets the requirements of Rule 23(b)(2).

**E. AS TO CLASS COUNSEL.**

Rule 23(g) requires appointment of class counsel at the time of certification. When appointing class counsel, the Court considers "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The Court may also consider other matters "pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B), 23(g)(2), 23(g)(4).

NYLAG has extensive experience representing low-income individuals with disabilities in class action litigation and has already devoted substantial time in this matter, including by filing an amended complaint, attempting to negotiate a settlement with DOH, and engaging in substantial factual and legal research. The Defendant also assents to their appointment as class counsel.

Therefore, the Court finds the appointment of NYLAG as class counsel satisfies Rule 23(g).

## III. CONCLUSION

For the foregoing reasons, the Court grants the Plaintiff's motion for class certification pursuant to Rule 23(b)(2). The Court defines the class as follows:

> All Medicaid recipients who were enrolled in the GuildNet managed long-term care plans in Suffolk, Nassau, or Westchester County as of March 1, 2017 and who suffered reductions in care without prior notice and opportunity to be heard when they transferred to new managed long-term care plans as a result of GuildNet's closure in their counties of residence.

The Court appoints Salvatore Guadagna as class representative. The Court appoints New York Legal Assistance Group as class counsel.

The parties are directed to meet and confer regarding whether class notice is appropriate and submit a joint letter in that regard no later than fourteen days from the issuance of this order. If the parties agree that notice is appropriate, they shall accompany their letter with a stipulation regarding the form of notice. If they are unable to agree, they shall submit an agreed upon briefing schedule for motion practice regarding the propriety of notice and the form of notice.

It is **SO ORDERED**:

Dated: Central Islip, New York

August 8, 2019

 \_\_/s/ Arthur D. Spatt_____

ARTHUR D. SPATT

United States District Judge