**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
SALVATORE GUADAGNA, individually and on
behalf of all persons similarly situated,

                              Plaintiff,

             -against-

HOWARD ZUCKER, as Commissioner of the New
York State Department of Health,

                            Defendant.
-----------------------------------------------------------------X

**REPORT AND RECOMMENDATION**

CV 17-3397 (JMA) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.**     **PRELIMINARY STATEMENT**

Plaintiff Salvatore Guadagna, on behalf of himself and the putative class, commenced this action against Defendant Howard Zucker (the "Commissioner" or "Defendant") as Commissioner of the New York State Department of Health (the "DOH") alleging violations of the Medicaid Act, 42 U.S.C. § 1396 *et seq.*, the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12131 *et seq.*, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution. *See generally* Amended Complaint ("Am. Compl.") [DE 38]. The class which was certified on August 8, 2019 consists of Medicaid recipients in Suffolk, Nassau, and Westchester Counties who were enrolled in GuildNet, Inc. ("GuildNet") -- a managed long-term care plan ("MLTP") -- as of March 1, 2017 and who suffered reductions in care without prior notice and an opportunity to be heard when they were transferred to new MLTPs prior to October 2, 2017 as a result of GuildNet's closure in their counties of residence. *See* DE 41.

On April 28, 2020, the named Plaintiff and class representative, Salvatore Guadagna, passed away. *See* DE 159. Robin Cassidy ("Cassidy"), a purported member of the certified class, now moves to intervene as the class representative. *See* Movant's Memorandum of Law in Support of Motion to Intervene ("Movant's Mem.") [DE 170-1]; Movant's Reply Memorandum of Law in Further Support of Motion to Intervene ("Movant's Reply") [DE 175]. Cassidy, seemingly on behalf of the class, also seeks to compel the Commissioner to produce personally identifying information for 190 individuals who were enrolled in GuildNet as of March 2017 and who transferred to a new MLTP, but for whom lead counsel has been unable to determine whether they suffered reductions in care based on the discovery produced to date. *Id.* at 20-23. The Commissioner opposes the motion chiefly on the grounds that Cassidy does not meet the class definition because she did not suffer any reductions of care when she transferred to a new MLTP. *See* Defendant's Memorandum of Law in Opposition to Motion to Intervene [DE 175] ("Def.'s Opp'n"). Judge Feuerstein, who was then assigned to this action, referred Cassidy's motion to this Court for a Report and Recommendation as to whether the motion should be granted. *See* DE 167.

For the reasons which follow, the Court respectfully recommends to Judge Azrack[1] that Cassidy's motion to intervene as class representative be GRANTED, but that her request for discovery be DENIED at this time.[2]

---

[1]  Following the untimely death of Judge Feuerstein, this case was reassigned to Judge Azrack on April 21, 2021. *See* April 21, 2021 Electronic Order.

[2]  "The granting of a motion to intervene is not dispositive of the merits and, accordingly, is within the pretrial reference authority of the undersigned magistrate judge." *Rosado v. Pruitt*, No. 17-CV-4843, 2018 WL 262835, at *1 n.1 (E.D.N.Y. Jan. 2, 2018); *Lopez v. Bell Sports, Inc.*, No. 14-CV-2530, 2014 WL 6473533, at 1 n.1 (E.D.N.Y. Nov. 18, 2014); *Arista Records, Inc. v. Dalaba Color Copy Ctr., Inc.*, No. 05-CV-3634, 2007 WL 749737, at *1 (E.D.N.Y. Mar. 7, 2007). Nevertheless, "a magistrate judge does not have authority 'to permit

2

## II.     BACKGROUND

The Court assumes familiarity with the underlying facts and procedural history of this case which have been detailed at length in prior decisions. *See Turano v. Zucker*, No. 17-CV-3397, 2017 WL 11593734, at *1 (E.D.N.Y. Nov. 4, 2017) (granting former plaintiff's motion to amend to add two named Plaintiffs, Selman Roher and Salvatore Guadagna); *Samele v. Zucker*, 324 F. Supp. 3d 313, 318 (E.D.N.Y. 2018) (granting, in part, and denying, in part, Defendant's motion to dismiss and denying class certification under Rule 23(b)(2) without prejudice); *Guadagna v. Zucker ("Guadagna I"),* 332 F.R.D. 86, 90 (E.D.N.Y. 2019) (granting class certification under Rule 23(b)(2)); *Guadagna v. Zucker ("Guadagna II")*, No. 17-CV-3397, 2019 WL 11666249, at *1 (E.D.N.Y. Oct. 29, 2019) (granting Plaintiff's motion to disseminate notice to class members under Rule 23(c)(2)(A)); Report and Recommendation, dated March 19, 2021 [DE 181] (recommending that the parties' cross-motions for summary judgment be granted, in part, and denied, in part).[3]  The Court therefore includes only that which is necessary to resolve the instant motion.

### A.     Procedural History

On June 6, 2017, former plaintiffs Gemma Samele ("Samele"), Marie Turano, and Leonard Turano (collectively, the "Original Plaintiffs") commenced this action against the Commissioner. *See* Complaint ("Compl.") [DE 1]. The Original Plaintiffs filed an Amended

---

maintenance of a class action' absent consent by the parties or a referral by the district judge." *Bondi v. New Rochelle Hotel Assocs.*, No. 17-CV-5681, 2018 WL 7246962, at *1 (S.D.N.Y. Dec. 7, 2018), *report and recommendation adopted*, 2019 WL 464821 (S.D.N.Y. Feb. 6, 2019) (quoting 28 U.S.C. § 636(b)(1)(A)). Here, Cassidy does not merely seek to intervene as a named party but rather seeks to intervene as the class representative. As discussed below, her designation as the new class representative implicates maintenance of the class under Rule 23(a). Therefore, the Court is addressing the motion through a Report and Recommendation.

[3]     Objections to the March 19, 2021 Report and Recommendation are pending before the District Judge.

3

Complaint on November 20, 2017 which remains the operative pleading in this action. *See* Am. Compl. [DE 28]. The Amended Complaint added Salvatore Guadagna and Selma Roher ("Roher") as Plaintiffs. *Compare* Am. Compl. *with* Compl. On November 21, 2017, Marie and Leonard Turano voluntarily dismissed their claims against the Commissioner by stipulation. *See* DE 33.

The Commissioner filed a motion to dismiss on December 21, 2017. *See* DE 39. On August 2, 2018, the Court granted the Commissioner's motion with respect to Samele and Roher, but denied the motion with regard to Guadagna. *See Samele*, 324 F. Supp. 3d at 318. Consequently, Guadagna is the only remaining named Plaintiff. *Id.*

On August 8, 2019, the Court granted class certification pursuant to Rule 23(b)(2) and appointed Guadagna as class representative. *See Guadagna I*, 332 F.R.D. at 90. On September 9, 2019, Guadagna filed a motion to disseminate notice to the class. *See* DE 129. The Court approved Guadagna's proposed notice to class members, pursuant to Rule 23(c)(2)(A), on October 29, 2029, but stayed dissemination of the notice pending the joint submission of a revised class definition. *See Guadagna II*, 2019 WL 11666249, at *1. The class definition was revised on November 15, 2019, pursuant to an agreement between the parties, as follows:

> All Medicaid recipients who were enrolled in the GuildNet managed long-term care plans in Suffolk, Nassau, or Westchester County as of March 1, 2017 and who suffered reductions in care without prior notice and opportunity to be heard when they transferred to new managed long-term care plans prior to October 2, 2017 as a result of GuildNet's closure in their counties of residence.

DE 141 at 2. On November 18, 2019, the Court directed the Commissioner to mail notice to the class or provide Guadagna with the names and mailing addresses of potential class members.

*See* DE 141. On December 4, 2019, the Commissioner mailed class notices to 1,156 individuals the Commissioner identified as potential class members. *See* DE 148.

On July 9 and October 4, 2019, the parties filed cross-motions for partial summary judgment on the claims asserted under the Medicaid Act, the ADA, and the Due Process Clause of the Fourteenth Amendment, along with a request for permanent injunctive relief. *See* DE 120; DE 131.

While the cross-motions were pending before the Court, Salvatore Guadagna passed away on April 28, 2020. *See* DE 159. A "Suggestion of Death" was filed on May 4, 2020. *Id.* Counsel for Guadagna advised the Court on May 26, 2020 that a member of the class intended to file a motion to intervene as class representative and proposed a deadline by which such a motion would be filed. *See* DE 160. Proposed class representative Cassidy initially filed her opening papers on June 24, 2020 [DE 161], after which the parties filed the fully briefed motion to intervene on October 14, 2020. *See* DE 170-175. In support of the motion, Cassidy submitted a Memorandum of Law [DE 170-1; DE 175], the Declaration of Benjamin Taylor, Esq. ("Taylor Decl.") [DE 170-2], and the Declaration of Robin Cassidy [DE 170-3 at 6-11], along with supporting exhibits for each declaration. In opposition to the motion, the Commissioner submitted a Memorandum of Law in Opposition [DE 172], the Declaration of Alicia McNall, the Medicaid Program Advisor for Staffing Solutions Organization, LLC, a contractor for the DOH [DE 171], and voluminous medical records for Cassidy u, which were filed under seal [DE 169].

The parties' cross-motions for summary judgment and Cassidy's motion to intervene as a class representative were referred to this Court for a Report and Recommendation as to whether the motions should be granted. *See* DE 167. On March 19, 2021, this Court issued a Report and

Recommendation on the cross-motions for summary judgment which remains pending. *See generally* Report and Recommendation, dated March 19, 2021.

**B.     Factual Background**

Robin Cassidy is a 62-year-old woman who lives in Ronkonkoma, New York. Cassidy Decl. ¶ 1. She is a Medicaid recipient and has been enrolled in GuildNet since approximately 2011 or 2012. *Id.* ¶¶ 7-8. Cassidy suffers from Amyotrophic Lateral Sclerosis ("ALS") and, as a result, is unable to care for herself. *Id.* ¶¶ 2-3. Prior to the onset of her ALS, Cassidy suffered from bone cancer -- a sarcoma in her left knee that resulted in a fusion of her leg -- which limited her mobility. *Id.* ¶ 4. As a result of her bone cancer and the ALS, Cassidy maintains that she requires constant care. *Id.* ¶¶ 3, 5. Cassidy also suffers from Type II diabetes, asthma, and osteoarthritis. *Id.* ¶ 6.

In 2017, Cassidy received 15 hours of home care per day from GuildNet. *Id.* ¶ 11. Because Cassidy is partially incontinent, GuildNet provided her with adult diapers and incontinence foam to prevent her from developing "skin breakdowns" and "dangerous sores."[4] *Id.* ¶ 10. She had initially requested and began receiving incontinence foam from GuildNet as of April 23, 2015. McNall Decl., Ex. A, Bates No. GuildNet_1132, Bates No. GuildNet_0171-0172.

In March 2017, Cassidy received a letter from GuildNet informing her that GuildNet was closing in her county of residence – Suffolk County, New York -- and that she would have to

---

[4] At the time, GuildNet also provided Cassidy with a glucometer for her diabetes, which electronically monitored her glucose levels. *See* Cassidy Decl. ¶ 12. Cassidy initially argued that the loss of her glucometer after transferring to a new MLTP constituted a "reduction of care" under the class definition. *See* Movant's Mem. at 11. Because her glucometer has since been replaced, Cassidy has withdrawn this argument. *See* Movant's Reply at 5 n.2. The Court therefore will not address this issue further.

6

enroll in a new MLTP. *Id.* ¶ 13. Thereafter, Cassidy reached out to several MLTPs to find one which would provide her with the same services and supplies she was receiving from GuildNet. *Id.* ¶ 14. According to Cassidy, she "was very afraid that if [she] did not choose a plan quickly, [she] would be left with no home care and would have to move into a nursing home, which [she] did not want to do." *Id.* ¶ 17. Aetna advised Cassidy that they would provide her with eight (8) hours of home care per day. *Id.* However, another plan, Centers Plan for Healthy Living ("CPHL"), offered Cassidy 15 hours of home care per day -- the same amount she was receiving from GuildNet. *Id.* ¶ 18. Consequently, Cassidy enrolled with CPHL in June 2017. *Id.*

Cassidy claims that she was "so frantic" to maintain the same number of hours of home care she was receiving from GuildNet that she had not considered the possibility that CPHL would not provide her with the same medical supplies she was receiving from GuildNet. *Id.* ¶ 19. After transferring from GuildNet, CPHL did not provide Cassidy with incontinence foam. *Id.* ¶ 22. And, although CPHL provided her with adult diapers, the diapers provided were thinner than those that she had previously received from Guildnet. *Id.* ¶¶ 22-23. Cassidy claims that the diapers "fell apart so quickly" which required her "to wear two or three at a time to stay dry and clean for even a little while." *Id.* ¶¶ 24-25. As a result of the inadequate diapers and lack of incontinence foam, Cassidy states that she suffered from Stage 1, Stage 2, and close to Stage 3 decubitus ulcers on her sacral area and her buttocks.[5] *Id.* ¶ 26. To date, CPHL does not provide

---

[5] Cassidy also states that she was denied Duoderm dressings to care for these wounds while enrolled with CPHL. *See* Cassidy Decl. ¶¶ 28, 30-31. However, these are not products or services that Cassidy alleges to have received when enrolled with GuildNet and lost upon transferring to CPHL. Therefore, this issue is not relevant to the instant motion and the Court need not address it further.

7

Cassidy with incontinence foam or adult diapers of the same thickness she had previously received from GuildNet.  *Id.* ¶¶ 25, 29.

Cassidy maintains that she never received notice from CPHL that her incontinence foam and adult diapers would be discontinued or changed, or that she had the right to challenge the loss of these medical supplies.  *Id.* ¶ 32.  In December 2019, Cassidy received class notice in the mail which informed her that she might be a member of a class of people who suffered reductions in care when they transferred to new MLTPs as a result of GuildNet's closure.  *Id.* ¶ 37.  She seeks to join this action to obtain the incontinence foam and adult diapers which she previously received from GuildNet, and to help others regain lost services or supplies when they transferred to a new MLTP as a result of GuildNet's closure.  *Id.* ¶ 39.

### III. DISCUSSION

In light of named Plaintiff and class representative Salvatore Guadagna's death, Cassidy seeks to intervene as class representative as of right under Rule 24(a)(2) and, alternatively, by permission under Rule 24(b)(1)(B).  *See* Movant's Mem. at 11-15.  The Commissioner does not oppose the motion on the basic principles governing intervention.  *See* Def.'s Opp'n at 17-27.  Indeed, the Commissioner does not dispute that Cassidy's claims meet the requirements imposed by either Rule 24(a) or (b).  *Id.*  Rather, the Commissioner disputes Cassidy's adequacy as class representative under Rule 23(a)(4).  *Id.*  The Court will address each issue in turn.

#### A. Preliminary Matter

Rule 24(c) sets forth the procedural requirements for a motion to intervene.  *See* Fed. R. Civ. P. 24.  A third party must serve the motion upon the parties to the action and "[t]he motion must state the grounds for intervention **and be accompanied by a pleading that sets out the**

**claim or defense for which intervention is sought**." Fed. R. Civ. P. 24(c) (emphasis added). "Failure to comply with these requirements can be grounds to deny a motion to intervene." *Kumaran, v. ADM Inv. Servs., Inc.*, No. 12-CV-3873, 2021 WL 2333645, at *8 (S.D.N.Y. June 7, 2021) (citing *G-I Holdings, Inc. v. Baron & Budd*, No. 01-CV-00216, 2002 WL 1822929, at *1 (S.D.N.Y. Aug. 7, 2002)). However, "a court may approve an intervention motion that is not accompanied by a pleading if the court is otherwise apprised of the grounds for the motion." *Id.* (citations omitted); *see also Briscoe v. City of New Haven*, No. 09-CV-1642, 2012 WL 13026762, at *5 (D. Conn. Oct. 5, 2012) ("Where ... the position of the movant is apparent from other filings and where the opposing party will not be prejudiced, Rule 24(c) permits a degree of flexibility with technical requirements.")). Here, Cassidy has not submitted a pleading which sets out the claims for which intervention is sought. However, she provided the factual basis of her claims in the intervention motion and maintains that she seeks to "bring identical claims, on an identical theory of law," to those asserted by Salvatore Guadgna.[6] Movant's Mem. at 17. Because the intervention motion apprises the Court of the grounds for Cassidy's intervention, the Court will proceed to the merits of the motion.

**B.    Intervention**

"Intervention is [] permissible in class actions, which are governed by Fed. R. Civ. P. 23 and 24." *Diduck v. Kaszycki & Sons Contractors, Inc.,* 149 F.R.D. 55, 57-58 (S.D.N.Y. 1993) (citation omitted). "To the extent that Rule 23 deals with intervention, it should be construed harmoniously with Rule 24." *Id.* (citation omitted). "Intervention 'should be liberally

---

[6]    Cassidy asserts that she "proposes no edits to the Amended Complaint filed by Mr. Guadagna," Movant's Mem. at 17, however, an amended pleading must be filed on behalf of the intervenor. Presumably, this pleading will set forth those facts already asserted which relate to the class and additional facts specific to Cassidy.

9

allowed,' especially since members of a class are normally bound by the judgment in the class action." *Id.* (citing Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1799). Indeed, "the Second Circuit's preferred approach where the named plaintiff is no longer an adequate class representative is to afford plaintiffs' counsel a reasonable period of time for the substitution or intervention of a new class representative." *Monaco v. Michael Hogan, Ph.D.*, No. 98-CV-3386, 2016 WL 3212082, at *2 (E.D.N.Y. June 8, 2016) (internal quotations and citations omitted); *see also In re Currency Conversion Fee Antitrust Litig.,* No. 21-M-0095, 2005 WL 3304605, at *3 (S.D.N.Y. Dec. 7, 2005) ("Indeed, a class has a legal status separate from the named plaintiff, thus, should the class representative become inadequate, substitution of an adequate representative is appropriate to protect the interests of the class.").

"Rule 24 permits a party to intervene in ongoing litigation as of right or by permission of the court." *Kamdem-Ouaffo v. Pepsico, Inc.*, 314 F.R.D. 130, 133-34 (S.D.N.Y. 2016). "In seeking intervention under this Rule, the proposed intervenor bears the burden of demonstrating that it meets the requirements for intervention." *Id.* A court must grant intervention as of right under Rule 24(a)(2) if: "(1) the motion is timely; (2) the applicant asserts an interest relating to the property or transaction that is the subject of the action; (3) the applicant is so situated that without intervention, disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the other parties." *Laroe Ests., Inc. v. Town of Chester*, 828 F.3d 60, 66 (2d Cir. 2016), *vacated and remanded on other grounds*, 137 S. Ct. 1645 (2017) (quotation omitted). "[A] failure to satisfy any one of these four requirements is a sufficient ground to deny the application." *Floyd v. City of New York.*, 770 F.3d 1051, 1057 (2d Cir. 2014) (per curiam) (quotation, emphasis, and brackets omitted).

Rule 24(b) gives a court discretion to grant intervention where an applicant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). When considering permissive intervention, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Id.* "[D]istrict courts are afforded wide discretion in ruling on motions for permissive intervention." *Sec. & Exch. Comm'n v. Callahan*, 193 F. Supp. 3d 177, 201 (E.D.N.Y. 2016) (citing *AT&T Corp. v. Sprint Corp.*, 407 F.3d 560, 561 (2d Cir.2005) ("'[A] denial of permissive intervention has virtually never been reversed."). Ultimately, however, "[t]he court considers substantially the same factors whether the claim for intervention is 'of right' under Fed. R. Civ. P. 24(a)(2), or 'permissive' under Fed. R. Civ.P. 24(b)(2)." *Id.* (quoting *R Best Produce, Inc. v. Shulman– Rabin Mktg. Corp*., 467 F.3d 238, 240 (2d Cir. 2006)). Therefore, the Court will not analyze permissive intervention and intervention as a matter of right separately for purposes of deciding this motion. *See id.*

Here, the Court finds that Cassidy has satisfied her burden of demonstrating that she meets the requirements for intervention under Rule 24(a)(2). As to the first element -- timeliness -- the record demonstrates that Cassidy's motion to intervene was timely filed. Although the motion was filed approximately three years after the action was commenced, the event which required intervention in the first instance was the death of the named Plaintiff and class representative, Salvatore Guadagna. *See Chen-Oster v. Goldman, Sachs & Co.*, No. 10-CV-6950, 2015 WL 4619663, at *6 (S.D.N.Y. Aug. 3, 2015), *aff'd*, No. 10-CV-6950, 2016 WL 11645644 (S.D.N.Y. June 6, 2016) ("In cases where the potential intervenor's interest is, at least at the outset, subsumed by that of a representative litigant, the trigger requiring intervention does not occur until it is apparent that the representative no longer protects the intervenor's interest.

11

[T]he relevant circumstance [ ] for determining timeliness is when the intervenor became aware that its interest would no longer be adequately protected by the parties.") (citing *Legal Aid Soc' of Alameda County v. Dunlop,* 618 F.2d 48, 50 (9th Cir. 1980)); *Diduck,* 149 F.R.D. at 58 (measuring the timeliness of a motion to intervene in a class action from the passing of the class representative); *NYTDA, Inc. v. City of New York,* No. 11-CV-1836, 2014 WL 4274219, at *4 (E.D.N.Y. Aug. 28, 2014) (measuring the timeliness of a motion to intervene in a class action from the time the court held that the class representative lacked standing to represent the class's interest); *Turkmen v. Ashcroft*, No. 02-CV-2307, 2010 WL 3398965, at *4 (E.D.N.Y. June 30, 2010), *report and recommendation adopted*, 2010 WL 3398968 (E.D.N.Y. Aug. 26, 2010) (measuring the timeliness of a motion to intervene in a class action from the time the named plaintiffs settled their claims). Cassidy advised the Court of her intention to intervene as class representative and proposed a deadline to do so three (3) weeks after Salvatore Guadagna's death, and subsequently moved for intervention two (2) months later. Courts have found filings after even longer delays to be timely. *See City of Syracuse, NY v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 20-CV-06885, 2021 WL 1051625, at *4 (S.D.N.Y. Mar. 19, 2021) (holding that the four months between the notice of interest in the case and the Rule 24(a) motion's filing "was not [an] excessive" delay) (collecting cases).

Moreover, the Commissioner has not identified any prejudice if the intervention motion is granted. Cassidy maintains that she does not intend to raise any new legal theories and the claims asserted by Salvatore Guadagna will remain unchanged. *See* Movant's Mem. at 16-17. The Commissioner also appears to have already conducted discovery on Cassidy's claims considering the voluminous medical records submitted in connection with Defendant's opposition to the motion. On the other hand, if the motion is not granted, Cassidy would suffer

considerable prejudice because Guadagna can no longer adequately represent her interests. *See Santander Consumer USA, Inc. v. City of Yonkers*, No. 20-CV-4553, 2021 WL 1964745, at \*2 (S.D.N.Y. May 17, 2021) ("It is firmly established that the most significant criterion in determining timeliness is whether the delay in moving for intervention has prejudiced any of the existing parties.") (quoting *Hartford Fire Ins. Co. v. Mitlof*, 193 F.R.D. 154, 160 (S.D.N.Y. 2000)); *Diduck,* 149 F.R.D. at 58 (finding that the interest of absent class members "can certainly not be protected by the deceased [class representative]"). These considerations support a finding that Cassidy's intervention motion is timely. *See NYTDA*, 2014 WL 4274219, at \*4.

With respect to the second element -- an interest in the action -- Cassidy has the same interest in this action as Guadagna had, which is a declaration that their rights were violated by DOH, along with an order compelling DOH to restore to former GuildNet enrollees the level of care they were previously receiving from GuildNet, until and unless they receive an adequate and timely notice and the opportunity to contest any reduction. *See* Movant's Mem. at 16. "[I]t is instructive that class members who have similar claims as named plaintiffs generally qualify as having an interest under Rule 24." *Royal Park Invs. SA/NV v. U.S. Bank Nat'l Ass'n*, 356 F. Supp. 3d 287, 295 (S.D.N.Y. 2018) (citing *McBean v. City of New York*, No. 02-CV-5426, 2007 WL 473711, at \*1 (S.D.N.Y. Feb. 13, 2007) ("There is no apparent dispute that the Proposed Interveners' claims are essentially identical to the claims raised by the current Plaintiffs.")).

As to the third element -- impairment of the interest -- disposition of this action may, as a practical matter, impair Cassidy's ability to protect her interest. "Class actions present a common example of cases in which an adverse judgment would impair the movant. Where, as here, "a class is certified … absent class members who do not opt out are bound by any judgment in a class action, and they are therefore clearly at risk of impairment." *Id.* at 295 (citing *Chen-*

13

*Oster*, 2015 WL 4619663, at *4 (observing that intervention is "commonly granted to absent class members" who could be bound by a judgment)). Separately, the possibility of *stare decisis* sometimes constitutes a sufficient risk of impairment to support intervention. *Id.* (citing *Oneida Indian Nation v. State of N.Y.*, 732 F.2d 261, 265 (2d Cir. 1984) (remanding to permit intervention due to the "significant likelihood that the ultimate resolution of this litigation will lead to the conclusions of law on issues of first impression, or mixed findings of fact and law, which will implicate principles of stare decisis")). Whether analyzing the potential impairment of Cassidy's interests due to *stare decisis* or her status as a possible absent class member, she faces a clear risk of impairment from adverse rulings in this case because her claims are based on the same course of conduct and legal theories as those asserted by Salvatore Guadagna.

As to the fourth element -- adequate representation -- Cassidy's interest cannot be adequately protected by a named plaintiff who has passed away. *See Diduck*, 149 F.R.D. at 58 (finding that intervenors' interest "can certainly not be protected by the deceased Mr. Diduck"). Because Cassidy has satisfied Rule 24(a)'s requirements and the Commissioner does not dispute the appropriateness of intervention specifically under Rule 24, the Court respectfully recommends to Judge Azrack that Cassidy's motion to intervene be GRANTED, and that Cassidy be permitted to filed a Second Amended Class Action Complaint. *See Chen-Oster*, 2015 WL 4619663, at *12 (permitting the filing of an amended pleading upon granting class members intervention in the class action).

### C. Adequacy of Representation

In order to justify a departure from "the usual rule that litigation is conducted by and on behalf of the individual named parties only, a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Goldemberg v.*

14

*Johnson & Johnson Consumer Co., Inc.*, 317 F.R.D. 374, 401 (S.D.N.Y. 2016) (citing *Califano v. Yamasaki,* 442 U.S. 682, 700-01, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979); *East Tex. Motor Freight Sys., Inc. v. Rodriguez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977)). "As such, Rule 23(a)(4), requires that class representatives 'fairly and adequately protect the interests of the class.'" *Id.* (quoting Fed. R. Civ. P. 23(a)(4)). "Determination of adequacy typically entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'" *In re Payment Card Interchange Fee and Merchant Disc. Antitrust Litig. ("In re Payment Card")*, 330 F.R.D. 11, 52 (E.D.N.Y. 2019) (quoting *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007)).

The Court previously held that Salvatore Guadagna was an adequate representative for the then proposed class under Rule 23(a)(4). *See Guadagna I*, 332 F.R.D. at 92-97. In doing so, the Court reasoned as follows:

> No identifiable actual or potential conflicts exist between the Plaintiff and other members of the putative class. All proposed class members suffered reduction of Medicaid services without receiving adequate notice. Also, the final relief sought by the Plaintiff on behalf of the proposed class is the same relief that he seeks for himself, namely, an order compelling DOH to restore to former GuildNet enrollees the level of care that they were previously receiving from GuildNet, until and unless they receive an adequate and timely notice and the opportunity to contest any reduction. These facts clearly establish his adequacy to represent the proposed class.

*Id.* at 96. Similarly, no identifiable actual or potential conflicts is apparent between Robin Cassidy and other members of the putative class and the final relief sought by Cassidy on behalf of the class is the same relief she seeks for herself. Moreover, lead counsel for Salvatore Guadagna remains as counsel for Robin Cassidy; therefore, there is no change in counsel's

15

qualifications or ability to conduct the litigation which would impact Robin Cassidy's adequacy as class representative.

Nevertheless, the Commissioner still disputes that Robin Cassidy can fairly and adequately protect the interests of the class. *See* Def.'s Opp'n at 17-27. The Commissioner globally argues that Cassidy is not a member of the defined class in the first instance and, consequently, should not be permitted to intervene as class representative. *Id.* There is no dispute that Cassidy has demonstrated that she (1) was a Medicaid recipient in Suffolk County enrolled in GuildNet as of March 1, 2017[7] and (2) transferred to a new MLTP prior to October 2, 2017 as a result of GuildNet's closure. *See id.* Yet the Commissioner argues that CPHL's failure to provide Cassidy with incontinence foam along with the diminished quality of Cassidy's adult diapers do not constitute reductions in care. *Id.* at 20-27.

As to the incontinence foam, the Commissioner argues that, as a recipient of consumer directed personal assistance services ("CDPAS"), (1) Cassidy was obligated to submit a new request for the foam from CPHL and (2) only upon the denial of that request could there be a reduction in care.[8] Def.'s Opp'n at 24-27. The consumer directed personal assistance program "is intended to permit chronically ill or physically disabled individuals receiving home care services under the medical assistance program greater flexibility and freedom of choice in

---

[7] The Commissioner notes that Cassidy's primary insurance is Medicare A + B which means that her providers would first bill Medicare for any Medicare covered services prior to submitting any claims to Medicaid. *See* Def.'s Opp'n at 15-16 (citing McNall Decl. ¶¶ 3-6). However, no explanation was provided as to how this distinction impacts Cassidy's status as a class member.

[8] According to the Commissioner, Cassidy first requested the incontinence foam from CPHL on November 14, 2018 and was denied the foam on November 15, 2018, which was outside the window of time class members were entitled to the same GuildNet levels of care. *See* Def.'s Opp'n at 26-27.

16

obtaining such services." SSL Section 365-f, 18 NYCRR § 505.28(a). Although Cassidy participates in this program, the Commissioner has not provided any legal support for the proposition that the program imposes such an obligation on its participants[9] or that a reduction of care may only occur after such an obligation is fulfilled. As Cassidy points out, the Commissioner improperly focuses on events *after* the reduction in care occurred.

The fact remains that Cassidy already requested the incontinence foam from GuildNet and was receiving that foam as of April 23, 2015. Upon transferring to CPHL -- the new MLTP -- Cassidy stopped receiving the foam without having received notice and an opportunity to be heard. This showing is sufficient for Cassidy to qualify as a class member and the Court need not address whether the change in the quality of her adult diapers also constituted a reduction in care. The Commissioner further attempts to dispute whether certain physical injuries Cassidy suffered can be attributed to CPHL's failure to provide her incontinence foam. *See* Def.'s Opp'n at 27. However, no explanation was provided as to how this issue is relevant to whether Cassidy constitutes a class member who may intervene as class representative.

---

[9] A participant of the program is expressly responsible for: "(1) managing the plan of care including recruiting and hiring a sufficient number of individuals who meet the definition of the consumer directed personal assistant; (2) timely notifying the social services district of any changes in the consumer's medical condition or social circumstances including, but not limited to, any hospitalization of the consumer or change in the consumer's address, telephone number or employment; (3) timely notifying the fiscal intermediary of any changes in the employment status of each consumer directed personal assistant; (4) attesting to the accuracy of each consumer directed personal assistant's time sheets; (5) transmitting the consumer directed personal assistant's time sheets to the fiscal intermediary according to its procedures; (6) timely distributing each consumer directed personal assistant's paycheck**,** if needed; (7) arranging and scheduling substitute coverage when a consumer directed personal assistant is temporarily unavailable for any reason; and (8) entering into a department approved memorandum of understanding with the fiscal intermediary and with the social services district that describes the parties' responsibilities under the consumer directed personal assistance program." SSL Section 365-f, 18 NYCRR § 505.28(g). None of these responsibilities seemingly encompass that which the Commissioner is now attempting to impose on Cassidy.

Because Cassidy has demonstrated that she is a member of the defined class who can "fairly and adequately represent the interest of the class" under Rule 23(a)(4), the Court respectfully recommends to Judge Azrack that Cassidy be appointed class representative.

### D. Discovery Production

Cassidy, presumably on behalf of the class, also seeks to compel the Commissioner to produce personally identifying information for 190 individuals who were enrolled in GuildNet as of March 2017 and transferred to a new MLTP, but for whom lead counsel has been unable to determine whether they suffered reductions in care based on the discovery produced to date. *See* Movant's Mem. at 20-23. In support of this request, Cassidy cites several cases which appear to support the dissemination of class member information under certain circumstances. Here, however, lead counsel concedes that discovery is sought regarding individuals for whom it is unclear whether they constitute class members. Nevertheless, on November 30, 2020, this Court denied a previous request for discovery made by the Commissioner holding, in relevant part, as follows:

> [D]iscovery between the parties' pending resolution of the motions for summary judgment has been foreclosed. After resolution of the motions for summary judgment, if either party requires additional discovery from the other, they must first make the appropriate motion to either re-open or lift the stay of discovery. Accordingly, Defendant's motion to compel [DE 148] is DENIED at this time

DE 180. For these same reasons, the Court respectfully recommends to Judge Azrack that Cassidy's request for personally identifying information for the 190 individuals at issue be DENIED at this time.

### V. CONCLUSION

For the foregoing reasons, the Court respectfully recommends to Judge Azrack that Cassidy's motion to intervene as class representative be GRANTED and that Cassidy be

permitted to filed a Second Amended Class Action Complaint.  However, the Court further recommends that Cassidy's request for discovery be DENIED at this time.

## VI. OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  *See* Fed. R. Civ. P. 6(a), (e).  Such objections by an attorney of record shall be filed with the Clerk of the Court via ECF.  Any objections by a *pro se* party shall be filed with the Clerk of the Court by overnight mail or regular mail.  **A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Joan M. Azrack.  Any requests for an extension of time for filing objections must be directed to Judge Azrack prior to the expiration of the fourteen (14) day period for filing objections**.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  *E.g*., *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

SO ORDERED.

Dated: Central Islip, New York
       July 9, 2021

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge