UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ROBIN CASSIDY, individually and on behalf of
all persons similarly situated,

                      Plaintiff,

     -against-

HOWARD ZUCKER, as Commissioner of the
New York State Department of Health,

                      Defendant.
-------------------------------------------------------------X

For Online Publication Only

**MEMORANDUM AND ORDER**
17-CV-03397 (JMA) (AKT)

**FILED**
**CLERK**

1:53 pm, Sep 30, 2021

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**AZRACK, United States District Judge:**

Former plaintiffs Marie Turano, Leonard Turano and Gemma Samele, individually and on behalf of all persons similarly situated, commenced this class action against Howard Zucker ("Defendant"), as Commissioner of the New York State Department of Health ("DOH"), on June 6, 2017. (ECF No. 1.) An Amended Complaint was filed on November 20, 2017, inter alia, adding Selma Roher and Salvatore Guadagna ("Guadagna") as named Plaintiffs. (ECF No. 28.) The Amended Complaint sought relief for Defendant's alleged violations of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12131 et seq.; Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; and 42 U.S.C. § 1983 ("Section 1983"), for the alleged deprivation of the named Plaintiffs' and putative class members' statutory rights under the Medicaid Act, 42 U.S.C. § 1396a(a)(3), and its implementing regulations, and their constitutional rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. (ECF No. 28.)

On November 21, 2017, Marie Turano and Leonard Turano voluntarily dismissed their claims against the Defendant pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii), and they were removed as Plaintiffs from the action. (ECF No. 33.) On August 2, 2018, Judge Spatt granted Defendant's

1

motion to dismiss with regard to Samele and Roher and dismissed their claims for lack of standing on the basis that they suffered no injury in fact. (ECF no. 71.) Judge Spatt, however, denied the motion with regard to Guadagna, who was then the only remaining named Plaintiff in the action, finding that the inherently transitory exception to the mootness doctrine applies to claims such as his. (ECF No. 71.)

On August 8, 2019, Judge Spatt granted Guadagna's motion for class certification and appointed Guadagna as class representative. (ECF No. 125.) The class (collectively with the class representative, "Plaintiffs") currently consists of "[a]ll Medicaid recipients who were enrolled in the GuildNet managed long-term care plans in Suffolk, Nassau, or Westchester County as of March 1, 2017 and who suffered reductions in care without prior notice and opportunity to be heard when they transferred to new managed long-term care plans prior to October 2, 2017 as a result of GuildNet's closure in their counties of residence."[1] (ECF No. 141.)

Guadagna, on behalf of the certified class, filed a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure seeking partial summary judgment on Plaintiffs' Section 1983 claims and Defendant cross-moved for summary judgment dismissing the Amended Complaint in its entirety. (ECF Nos. 120, 131-134, 139 & 144.) While the cross motions for summary judgment were sub judice, Guadagna passed away. (See ECF No. 159.) On July 24, 2020, Robin Cassidy ("Cassidy"), a member of the certified class, moved for leave to intervene as class representative and for an order compelling Defendant to provide certain discovery. (ECF No. 170.)

---

[1] There is a dispute over the temporal limitation of the class definition. (See ECF Nos. 147 & 154.) Plaintiffs filed a motion to modify the class definition to revert to the original class definition, i.e., to omit the "prior to October 2, 2017" limitation. Judge Sandra J. Feuerstein, from whom this case was reassigned, terminated Plaintiffs' motion to modify the class definition with leave to renew pending determination of the summary judgment motions. (ECF No. 167.)

Defendant likewise sought to compel certain discovery from Plaintiffs after the motions for summary judgment were filed. (ECF No. 148.) On September 9, 2020, Judge Feuerstein referred Cassidy's motion for leave to intervene, Defendant's motion to compel and the motions for summary judgment to Magistrate Judge A. Kathleen Tomlinson. (ECF No. 167.)

On November 30, 2020, Judge Tomlinson denied Defendant's motion to compel without prejudice. (ECF No. 180.) Judge Tomlinson issued a Report and Recommendation ("SJ R&R") dated March 19, 2021, which recommends that summary judgment be GRANTED (i) in favor of Plaintiffs on their Section 1983 claims alleging violations of the Medicaid Act, its implementing regulations, and their procedural due process rights, and (ii) in favor of Defendant dismissing Plaintiffs' claims alleging violations of the ADA, the Rehabilitation Act and their substantive due process rights; and that the motions otherwise be DENIED. (ECF No. 181.) Defendant filed a timely objection to the SJ R&R's recommendations that: (i) summary judgment be granted in favor of Plaintiffs on their Section 1983 claims alleging violations of the Medicaid Act, its implementing regulations and their procedural due process rights, and (ii) Defendant's summary judgment motion be denied on Defendant's arguments that Plaintiffs' claims failed on the merits, that their claims and requests for relief were moot, and that Plaintiffs' request for injunctive relief must be denied for lack of standing. (ECF No. 183.) Plaintiffs filed a response in opposition to Defendant's objections, to which Defendant filed a reply. (ECF Nos. 185 & 186.)

Thereafter, Judge Tomlinson issued an R&R dated July 9, 2021 ("Intervenor R&R"), which recommended that Cassidy's motion to intervene be granted and her motion to compel be denied "at this time." (ECF No. 188.) On September 13, 2021, the Court:

(1) adopted the Intervenor R&R in its entirety as the opinion of this Court;

(2) granted Cassidy's motion to intervene as class representative;

> (3) directed Cassidy to file an Amended Complaint by no later than September 15, 2021 and Defendant to file an Answer to the Amended Complaint by no later than September 25, 2021; and
>
> (4) deferred decision on the pending summary judgment motions, the SJ R&R and Defendant's objections to the SJ R&R until after Cassidy filed the Amended Complaint; and indicated that the Court would evaluate those items in light of Cassidy's Amended Complaint.

(ECF No. 190.)

Cassidy then filed an Intervenor Class Action Complaint ("Intervenor Complaint") on September 15, 2021, (ECF No. 191,) and Defendant filed an Answer thereto on September 22, 2021. (ECF No. 193.)

## I. Facts Applicable to Cassidy

The Court assumes familiarity with the underlying facts as detailed in the SJ R&R, but modifies the SJ R&R to include the facts applicable to Cassidy, as the newly appointed class representative. The following facts are drawn from the Intervenor Complaint and Defendant's Answer thereto[2]:

Cassidy is a Medicaid recipient who resides in Suffolk County, (ECF No. 191 ¶¶ 15, 137,) and was enrolled with GuildNet from December 1, 2014 through May 31, 2017. (ECF No. 193 ¶¶ 4 & 15.) In 2017, Cassidy received managed long term care ("MLTC") services from GuildNet, including fifteen (15) hours of home care per day and the incontinence supplies she needed, i.e.

---

[2] The facts applicable to Cassidy in the Intervenor Complaint are consistent with Cassidy's declaration in support of her motion to intervene. (Compare ECF No. 191 with ECF No. 170-3, Ex. C.) Defendant generally either admits, or denies knowledge or information of, the factual allegations applicable to Cassidy in the Intervenor Complaint, except to deny, as a mischaracterization, the allegation about the contents of the March 2017 Letter; and to deny the allegations about CPHL's failure to provide Cassidy with a glucometer. (ECF No. 193 ¶¶ 143, 150-151.) Defendant also denies Cassidy's allegation that "CPHL has never given [her] the incontinence supplies that she was getting from GuildNet and that are critical to her health," (ECF No. 191 ¶ 152), but he does not indicate a basis for that denial and then denies knowledge or information of Cassidy's more specific allegations about the incontinence supplies she received and did not receive from CPHL. (See ECF No. 193, ¶¶ 152, 153-155.) Defendant did not object to Judge Tomlinson's finding in the Intervenor R&R, adopted as an order of this Court, that Defendant appears to have already conducted discovery on Cassidy's claims, (ECF No. 188,) and Defendant has not requested any additional discovery in this case related to the allegations in the Intervenor Complaint.

4

adult diapers and incontinence foam. (ECF No. 191 ¶¶ 15, 140-141; ECF No. 193 ¶ 141.) GuildNet also provided Cassidy with the medical equipment that she needed to be safe, including a glucometer which electronically monitored her glucose levels and notified a nurse if her glucose was too high or too low. (ECF Nos. 191 & 193 ¶ 142.)

After Cassidy received GuildNet's March 2017 Letter informing her, inter alia, that GuildNet would no longer be offering MLTC services to affected enrollees, including herself, effective June 1, 2017, and that she would have to select a new MLTCP, Cassidy called several other MLTCPs to find one that would offer her the same services as GuildNet. (ECF No. 191 ¶ 144.) According to Cassidy, as a result of the March 2017 Letter, she believed that she did not have much time to enroll in another plan because GuildNet was closing and she feared that if she did not choose a plan quickly, she would be left with no home care and would have to move into a nursing home. (Id. ¶¶ 145, 147.) Cassidy alleges that she had great difficulty getting the MLTCPs she contacted to come and assess her, and that an MLTCP named Aetna informed her that they would give her only eight (8) hours of home care per day. (Id. ¶ 146.)

Another MLTCP, Centers Plan for Healthy Living ("CPHL"), offered Cassidy fifteen (15) hours of home care per day, which was the same amount she was receiving from GuildNet. (ECF Nos. 191 & 193 ¶ 148.) According to Cassidy, she was so frantic to get at least fifteen (15) hours of home care per day, that she enrolled with CPHL before inquiring whether they would provide her with all of the medical supplies that she was receiving from GuildNet. (ECF No. 191 ¶¶ 148-149.) Cassidy was enrolled in CPHL effective June 1, 2017. (ECF No. 193 ¶¶ 4 & 15.)

Cassidy asserts that following her transfer from GuildNet, CPHL did not provide her with a glucometer or the incontinence foam she had received from GuildNet, and provided her with adult diapers that were not of the same quality as the ones provided by GuildNet and "were so thin

5

and fell apart so quickly that she would have to wear two or three at a time to stay dry and clean for even a little while." (ECF No. 191 ¶¶ 150-155.) According to Defendant, CPHL did not provide Cassidy with a glucometer because she already had one. (ECF No. 193 ¶ 150.) Cassidy never received written notice that the provision of her glucometer and incontinence supplies would be discontinued upon her enrollment with CPHL, and she was never told that she could challenge the loss of medical supplies at a fair hearing. (ECF No. 191 ¶ 162.)

## II. Review of the SJ R&R

Cassidy is a member of the certified class, and the Court has already found that she has the same interest in this action as Guadagna had. (See ECF Nos. 188 & 190.) Moreover, the Intervenor Complaint made no substantive changes to the causes of action asserted in this class action, and edited the prayer for relief only to remove elements of the originally requested relief that are no longer applicable. (See ECF Nos. 191 & 192.) Accordingly, the Court finds that the appointment of Cassidy as the new class representative and the filing of the Intervenor Complaint has little to no effect on the analysis and disposition of the summary judgment motions, the SJ R&R or Defendant's objections to the SJ R&R.

After conducting a review of Cassidy's Intervenor Complaint, Defendant's Answer to the Intervenor Complaint, the full record (including the motion papers, the SJ R&R, and objections,) and applicable law, the Court adopts Judge Tomlinson's SJ R&R, as modified to include the allegations applicable to Cassidy in the Intervenor Complaint, as the opinion of the Court.

In reviewing a magistrate judge's report and recommendation, a court must "make a de novo determination of those portions of the report or . . . recommendations to which objection[s] [are] made." 28 U.S.C. § 636(b)(1)(C); see also Brown v. Ebert, No. 5-CV-5579, 2006 WL 3851152, at *2 (S.D.N.Y. Dec. 29, 2006). The Court "may accept, reject, or modify, in whole or

in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Those portions of a report and recommendation to which there is no specific reasoned objection are reviewed for clear error. See Pall Corp. v. Entegris, Inc., 249 F.R.D. 48, 51 (E.D.N.Y. 2008).

The Court finds no clear error in the portions of Judge Tomlinson's SJ R&R to which there are no specific objections. In particular, Judge Tomlinson recommended granting the branches of Defendant's motion seeking summary judgment dismissing Plaintiffs' ADA, Rehabilitation Act and substantive due process claims. Applying clear error review, the Court adopts Judge Tomlinson's findings and recommendations regarding those claims.

I next address the portions of the SJ R&R to which Defendant has objected. For Defendant's objections, I have undertaken a de novo review of the record, the SJ R&R, the objections, the opposition and the reply, and considered them in light of the Intervenor Complaint and Defendant's Answer to the Intervenor Complaint.  For the reasons stated below, the Court denies Defendant's objections and adopts the SJ R&R as modified herein.

Defendant objects to the SJ R&R's recommendations that:  (1) Plaintiffs' motion for summary judgment be granted on their Section 1983 claims alleging violations of the Medicaid Act, its implementing regulation, and their Fourteenth Amendment procedural due process rights; and (2) Defendant's motion for summary judgment be denied concerning those claims.  Defendant also objects to the SJ R&R's recommendations concerning mootness and Plaintiffs' request for permanent injunctive relief.  Defendant's objection further asserts that the SJ R&R failed to address Defendant's request for summary judgment on Plaintiffs' claims under the Declaratory Judgment Act.

Defendant generally argues that "a fundamental error and misunderstanding of the law that permeates the objectionable portions of the [SJ] R&R [is the adoption of] Plaintiffs' theory of the

7

case that MLTCP enrollees who are considering a transfer to a new MLTCP that has assessed the potential enrollees and determined that they require fewer or different levels of care or types of services than they are receiving from their current MLTCP, have the right to notice and a fair hearing in order to challenge the prospective MLTCP's offer of fewer or different services than they are receiving from their current MLTCP." (ECF No. 183.)

More specifically, Defendant contends that the SJ R&R fails: (i) to recognize that Plaintiffs' description of the facts has been rendered obsolete by events that occurred subsequent to the commencement of this case, or by the passage of time, such as the enactment of "Managed Long Term Care Policy 17.02," and (ii) "to acknowledge that the class Plaintiffs certainly could be robbed of any standing they may have possessed in 2017 by the mere passage of time, coupled with the fact that at least every six months since they transferred from GuildNet to another MLTCP, every one of the class Plaintiffs was required to be reassessed by any MLTCP in which he or she has been enrolled since leaving GuildNet over four years ago." (ECF No. 183.) According to Defendant, since Plaintiffs' current MLTCPs "presumably are providing them now with the level of services that are appropriate to their current needs, . . . they no longer possess a live case and controversy, thus depriving the Court of subject matter jurisdiction and rendering academic the consideration of what, if any type of remedy the Court could provide to them at this point in time." (Id.) In addition, Defendant argues that the SJ R&R errs by "put[ting] the onus on Defendant alone to show that the class plaintiffs' claims are moot . . . [because] Plaintiffs bear a continuing duty to establish that they still possess standing to maintain this lawsuit." (Id.)

As an initial matter, to the extent Defendant challenges the determinations made in Judge Spatt's Order dated August 2, 2018—which found, inter alia, that the inherently transitory exception to the mootness doctrine applied in this case—the Court rejects that challenge.

8

Defendant never timely moved for reconsideration of that Order pursuant to Local Civil Rule 6.3. Moreover, the Court agrees with Judge Spatt's analysis on these points.[3]

Turning to Defendant's objection regarding the burden of proof, this objection is flawed because it ignores "the distinction between mootness and standing." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 191 (2000). Although the Supreme Court has stated that "the doctrine of mootness can be described as the doctrine of standing set in a time frame[,] . . . . the description of mootness as 'standing set in a time frame' is not comprehensive." Id. at 189-90 (internal quotations and citation omitted). The Court explained, as relevant here, that "if mootness were simply 'standing set in a time frame,' the exception to mootness that arises when the defendant's allegedly unlawful activity is 'capable of repetition, yet evading review,' could not exist. . . . Standing admits of no similar exception; if a plaintiff lacks standing at the time the action commences, the fact that the dispute is capable of repetition yet evading review will not entitle the complainant to a federal judicial forum." Id. at 190-91. "Standing doctrine functions to ensure, among other things, that the scarce resources of the federal courts are devoted to those disputes in which the parties have a concrete stake. In contrast, by the time mootness is an issue, the case has been brought and litigated, often . . . for years." Id. at 192. Thus, there are "important difference[s] between the two doctrines." Id.; see also Mhany Mgmt., Inc. v. County of Nassau, 819 F.3d 581, 603 (2d Cir. 2016) (holding that the exceptions to mootness "underline the different aims of the standing and mootness doctrines.") "The burden of establishing standing falls on the plaintiff, as it 'functions to ensure, among other things, that the scarce resources of the federal

---

[3] Judge Spatt concluded that the inherently transitory exception to mootness applied to Guadagna. It may not even be necessary for Cassidy to rely on this exception because, unlike Guadagna, it does not appear that all of the MLTC services Cassidy had received from GuildNet were ever restored. In any event, even assuming arguendo that, like Guadagna, all of the MLTC services Cassidy had received from GuildNet have been restored, Judge Spatt's rationale for applying the inherently transitory exception to Guadagna applies equally to Cassidy.

courts are devoted to those disputes in which the parties have a concrete stake.' . . . By contrast, the burden of showing mootness logically falls on a defendant because . . . [t]o abandon the case at an advanced stage may prove more wasteful than frugal.'" Mhany, 819 F.3d at 603. Since standing and mootness are distinct doctrines, and the mootness doctrine and inherently transitory exception thereto apply in this case, the SJ R&R properly placed the burden on Defendant to show that Plaintiffs' claims and requests for relief are moot.

As set forth below, the Court also agrees that Plaintiffs possessed constitutional and statutory rights to maintain their existing level of services until receiving an opportunity for a fair hearing and their right to receive care at those levels is not vitiated by the fact that their medical needs have been reassessed by their new MLTCPs since the commencement of this lawsuit. Once Plaintiffs' level of care was reduced in violation of their rights, the assessment process, which does not include a neutral arbiter or opportunity to provide evidence, does not suffice.

Defendant also challenges the SJ R&R's finding that "Plaintiffs possessed a statutory right to notice and an administrative fair hearing because their Medicaid benefits were denied, reduced, or terminated." (ECF No. 181.) Defendant argues that "[n]one of th[e] federal or state statutes, regulations or cases [cited in the SJ R&R] provide any of those rights to Plaintiffs who, for the purposes of their claims, were not enrolled with—and thus had no contractual relationship—with the MLTCP that provided an offer of service." (ECF No. 183.) According to Defendant, "there is no support for the [SJ] R&R's view that the source of those rights can be found by implication in statutes, regulations or cases that are silent with regard to potential enrollees in an MLTCP." (Id.)

Defendant contends that a recent case, Bellin v. Zucker, 457 F. Supp. 3d 414 (S.D.N.Y. April 30, 2020), aff'd in relevant part, 6 F.4th 463 (2d Cir. 2021), "dismissed claims very similar to the ones asserted in this case, that were supported by arguments very similar to the ones asserted

by Plaintiffs here."[4] (ECF No. 183.) The plaintiff in that putative class action alleged, inter alia, that under federal Medicaid statutes and regulations governing the appeal rights of Medicaid beneficiaries, the beneficiaries are entitled to appeal the initial determinations of the amount of hours of personal care services ("PCS") that an MLTCP will provide them if they choose to enroll with it, and to notice of the right to appeal such initial determinations. Id. at 467, 483. The Second Circuit affirmed the district court's conclusion that the plaintiff did not have a statutory right to appeal an MLTCP's initial determination of her PCS needs, holding that an MLTCP's initial determination of a particular number of PCS hours does not constitute an "adverse benefit determination" within the meaning of 42 C.F.R. § 438.400(b)(1). Id. at 483. That regulation "define[s] an 'adverse benefit determination' as, among other things, '[t]he denial or limited authorization of a requested service, including determinations based on the type or level of service, requirements for medical necessity, appropriateness, setting, or effectiveness of a covered benefit.'" Id. at 483 (emphasis added) (quoting 42 C.F.R. § 438.400(b)(1)). The Court held that Medicaid beneficiaries have "no opportunity to formally 'request'" a particular number of care hours when applying for PCS. Id. at 484.

The Second Circuit also rejected the plaintiff's argument that "pre-enrollment initial determinations of personal care services hours trigger th[e] notice requirement [of 42 C.F.R. §

---

[4] Defendant's objections cite to the district court's decision in Bellin. In his Answer to the Intervenor Complaint, Defendant also refers to the Second Circuit's decision in Bellin, inter alia, as a basis for denying: (i) that Plaintiffs possess any statutory or constitutional rights to receive the same level of services unless and until they receive timely and adequate notice and an opportunity for a fair hearing prior to any reduction or termination in care, (ECF No. 193 ¶¶ 7, 86, 100, 162-163, 166-168, 170-175,) and (ii) that a class was properly defined and certified in this case, and that Cassidy satisfies the requirements essential for certification as a representative of the certified class. (Id. ¶¶ 56, 57, 59, 164-165, 169, 185.) With respect to point "(i)" above, for the reasons set forth herein, Bellin is distinguishable from this case. With respect to point "(ii)," there is no support in Bellin for Defendant's contention that certification of the class in this case was improper; and this Court has already found, in the Intervenor R&R adopted as an Order of the Court, that Cassidy is an adequate class representative. (ECF Nos. 188 & 190.) Notably, Defendant did not file any objections to the Intervenor R&R, (ECF No. 188,) and, thus, waived further judicial review of any of the findings and conclusions therein. See Smith v. Campbell, 782 F.3d 93, 102 (2d Cir. 2015).

438.404(c)(3)] based on informal requests made by potential recipients for a particular number of hours," because "the regulations contemplate notice to <u>enrollees</u> only." <u>Bellin</u>, 6 F.4th at 484-85 (emphasis in original). Additionally, the Court rejected the plaintiff's alternative argument that "Medicaid beneficiaries are entitled to an appeal of initial care hours determinations based on the guarantee of fair hearing appeal rights in 42 U.S.C. § 1396a(a)(3)" on the basis that the plaintiff "did not make a 'claim' for personal care services that was 'denied'" within the meaning of 42 C.F.R. § 431.220(a)(1), because "potential recipients" of PCS do not "make a 'claim' for a particular number of hours of personal care services that is denied through MLTC[P]s' initial hours determinations." <u>Id.</u> at 485-86.

<u>Bellin</u> is distinguishable from the instant case. The plaintiff and putative class in that case were new applicants for home care services who were not yet enrolled in any MLTCP and were seeking to obtain services that they had not yet been authorized to receive. Therefore, <u>Bellin</u> considered only what constitutes an adverse benefit determination within the meaning of 42 C.F.R. § 438.400(b)(1). In contrast, this case involves an involuntary plan-to-plan transfer and the certified class consists of recipients of MLTC services who were already enrolled in one MLTCP and were seeking to prevent services—which they were already receiving, and that had already been determined to be medically necessary—from being reduced when they transferred to a new MLTCP because of GuildNet's closure. Unlike <u>Bellin</u>, this case implicates 42 C.F.R. § 438.400(b)(2), which defines an adverse benefit determination to mean "[t]he reduction, suspension, or termination of a previously authorized service." Moreover, the plaintiff and putative class in <u>Bellin</u> were not "enrollees" of any MLTCP, whereas every member of the certified class in this case was already enrolled in an MLTCP and receiving previously authorized MLTC services. Accordingly, <u>Bellin</u> is not applicable to this case.

12

Defendant further contends that the SJ R&R "incorrectly cites to 42 U.S.C. § 1396a(a)(3) for the proposition that Plaintiffs somehow are entitled to pre-deprivation process [because a] correct reading of that statute reveals that the word 'before' does not refer to a moment in time (pre- or post-deprivation) when a fair hearing must be held, but rather, connotes that a fair hearing must take place 'in front of' the State agency in question." (ECF No. 183.)

Notwithstanding any misinterpretation of that statute, Defendant's objection overlooks the fact that the SJ R&R also relies on Fishman v. Daines, 743 F. Supp. 2d 127 (E.D.N.Y. 2010), which held that the statute "creates a right to a fair hearing before Medicaid recipients have their aid revoked," without relying upon the "before the State agency" language of § 1396a(a)(3). Id. at 144 (emphasis added). Thus, the SJ R&R correctly concluded that Plaintiffs have a right to pre-deprivation process before their Medicaid benefits are reduced, suspended or terminated. See Bizjak v. Blum, 490 F. Supp. 1297, 1302 (N.D.N.Y. 1980) (holding that under 42 U.S.C. § 1396a(a)(3), a state plan "must provide a recipient, before he is denied benefits, the opportunity for a 'fair hearing' before the state agency."); cf. Goldberg v. Kelly, 397 U.S. 254, 264 (1970) ("[W]hen welfare [including aid for medical care] is discontinued, only a pre-termination evidentiary hearing provides the recipient with procedural due process.").

Defendant also contends that the SJ R&R's "discussion of Defendant's purported procedural due process violations also completely ignores the fact that prior to Defendant's issuance of the Transition Policy, the GuildNet transferees possessed all of the procedural due process rights that had long been afforded pursuant to Defendant's 'plan to plan transfer' policy[;] . . . [and] disregards the procedural due process protections afforded individuals who are switching from one MLTCP to another as 'involuntary' transferees. . . ." (ECF No. 183.) Defendant challenges the SJ R&R's reliance on Duncan v. Sullivan Cnty., No. 18-CV-9269, 2020 WL

13

1033064, at *8 (S.D.N.Y. Mar. 2, 2020), and Mayer v. Wing, 922 F. Supp. 902, 910 (S.D.N.Y. 1996).  The SJ R&R cited these cases to find that Plaintiffs possessed a protectable property interest in the continued receipt of their health benefits. Defendant argues that "[t]hose cases dealt with the termination or reduction of services by those plaintiffs' current provider of services[,]" whereas in this case, Plaintiffs were afforded "the option of remaining with GuildNet and continuing to receive the same level of services while these GuildNet enrollees considered whether to accept proposed plans of care from other MLTCPs, who may or may not assess their then-current care needs at the same level as GuildNet was providing." (ECF No. 183.) In addition, Defendant challenges the SJ R&R's finding that GuildNet's March 2017 Letter and the DOH's May 2017 Letter were not "reasonably calculated under the circumstances to apprise the Plaintiffs of the pendency of the action and afford them an opportunity to present their objections." (Id.) According to Defendant, "such finding ignores the plain fact that in addition to exhorting its enrollees that 'It is important that you select a new MLTC plan before May 18, 2017 to assure a smooth transfer to your new plan,' the next sentence in GuildNet's letter states clearly that 'You will continue to receive services from GuildNet until your transfer to your new plan is complete.'" (Id.)

"In many, perhaps most, contexts, notice is constitutionally sufficient if it is reasonably calculated to reach and inform the person entitled to be notified." Stieberger v. Apfel, 134 F.3d 37, 39 (2d Cir. 1997). Defendant fails to recognize that the March 2017 Letter was unclear and that, as a result, Plaintiffs, like Cassidy, believed that they had to choose a new MLTCP before June 1, 2017 and that their ability to freely choose a new MLTCP was being curtailed. Indeed, the DOH began receiving complaints and inquiries in that regard from GuildNet enrollees and their family members in response to the March 2017 Letter. Based upon, inter alia, the language of the Letters

at issue, the Court agrees with Judge Tomlinson's conclusion that the Letters were not reasonably calculated to inform Plaintiffs of their rights and, thus, did not provide Plaintiffs with constitutionally adequate notice. The Court also concurs that since the GuildNet enrollees were current recipients of MLTC services, they possessed a property interest in their continued receipt of such benefits protected by the Due Process Clause. See Mathews v. Eldridge, 424 U.S. 319, 332 (1976) ("[T]he interest of an individual in continued receipt of [social services] benefits is a statutorily created 'property' interest protected by the Fifth [and Fourteenth] Amendment."); Pierre v. Doe(s) #1, No. 19-CV-1030 (WFK), 2019 WL 1232089, at *3 (E.D.N.Y. Mar. 14, 2019) ("Qualified recipients of public assistance benefits have a property interest in their continued receipt of food stamps, Medicaid and cash assistance."); Fishman, 743 F. Supp. 2d at 146 ("Medicaid benefits constitute a protected property interest.")

For the reasons set forth above, as well as for the additional reasons set out in Judge Tomlinson's analysis of the Medicaid Act and Procedural Due Claim, the Court grants Plaintiffs summary judgment on those claims. See SJ R&R at 25–40.

Additionally, Defendant argues that SJ R&R erred in addressing Defendant's motion that sought summary judgment on Plaintiffs' request for injunctive relief. With respect to this issue, the SJ R&R concluded that Defendant "has not adequately addressed the[] individual factors [necessary to grant a permanent injunction] beyond merely repeating the arguments made on the merits of the motion, nor does he address the specific injunctive relief sought in the Amended Complaint." (ECF No. 181 at 44) (emphasis added). The Court agrees that, given Defendant's meager arguments concerning the issue of injunctive relief, Defendant's motion for summary judgment on this issue must be denied. In his motion for summary judgment, Defendant quoted the three (3) paragraphs in the Amended Complaint seeking injunctive relief, but did not attempt

15

to explain how those permanent injunction factors applied to any of the specific claims or relief requested.[5] (see ECF No. 134.) Accordingly, the Court agrees that Defendant failed to show that he is entitled to judgment as a matter of law dismissing Plaintiffs' request for injunctive relief. See Fed. R. Civ. P. 56(a). Moreover, in the event that Plaintiffs seek injunctive relief based on the Court's summary judgment ruling in their favor, Defendant will have an opportunity to address the propriety of any requested injunctive relief.

Relatedly, Defendant also argues that the SJ R&R should have deemed Plaintiffs' request for injunctive relief to be abandoned because Plaintiffs purportedly failed to respond to the portion of Defendant's cross-motion that sought summary judgment on Plaintiffs' request for a permanent injunction. However, Defendant sought summary judgment concerning Plaintiffs' request for a permanent injunction by arguing that the Plaintiffs "lack standing" because "Defendant already has provided the class Plaintiffs with all of the injunctive relief they seek in the Amended Complaint." (ECF No. 134.) Although Defendant's papers characterize this argument as a standing issue, Defendant again confuses standing with mootness. As set forth above, Defendant's argument is actually one of mootness and Plaintiffs addressed the issue of mootness in their response to the portion of Defendant's motion seeking summary judgment, which sought to dismiss their claims and requests for relief as moot. (See ECF No. 139.)

Finally, Defendant argues that the SJ R&R should have: (i) granted, as unopposed, the portion of Defendant's cross motion that sought summary judgment on Plaintiffs' claim under the Declaratory Judgment Act; and (ii) addressed "Defendant's unopposed argument that the

---

[5] The Court recognizes that the Intervenor Complaint omits two (2) of the paragraphs requesting injunctive relief and only seeks a permanent injunction "to ensure that Class Members who switched to new MLTCPs as a result of GuildNet's March 2017 letter and are receiving fewer services than they received from GuildNet be restored to the level of care they previously received while enrolled in GuildNet until and unless they are provided with a timely and adequate notice and an opportunity for a Fair Hearing at which to challenge the reduction." (ECF No. 191.)

16

Plaintiffs' moot claims fail to satisfy the Declaratory Judgment Act's requirements, thus precluding the declaratory relief sought by plaintiffs." (ECF No. 183 (emphasis added).) These objections are meritless.

First, Defendant's assertion that Plaintiff failed to oppose Defendants' Declaratory Judgment Act argument is not persuasive. As with Defendant's argument regarding Plaintiffs' request for injunctive relief, Plaintiffs opposed Defendant's argument that their claims under the Declaratory Judgment Act should be dismissed in Plaintiffs' response to Defendant's mootness argument. (ECF No. 139.) Second, although the SJ R&R does not specifically address Plaintiffs' claims under the Declaratory Judgment Act, Defendant only raised these arguments about the Declaratory Judgment Act in conjunction with his argument on mootness. Thus, the SJ R&R implicitly addressed those arguments in the section of the SJ R&R that rejected Defendant's mootness argument. Because Defendant's Declaratory Judgment Act argument was premised on Defendants' flawed mootness argument—which the R&R correctly rejected—the Court similarly rejects Defendant's Declaratory Judgement Act argument.

### III. Conclusion

For the reasons set forth above, the Court adopts, as modified herein, Judge Tomlinson's SJ R&R in its entirety as the opinion of this Court and, for the reasons set forth therein, summary judgment is GRANTED in favor of Defendant dismissing Plaintiffs' claims alleging violations of the ADA, the Rehabilitation Act and their substantive due process rights; and in favor of Plaintiffs on their Section 1983 claims alleging violations of the Medicaid Act, its implementing regulations, and their procedural due process rights. The motions for summary judgment are otherwise DENIED.

Cassidy, on behalf of the certified class as currently defined, shall submit a proposed judgment granting Plaintiffs declaratory relief as a remedy for Defendant's violations of the Medicaid Act, its implementing regulations, and their procedural due process rights **on or before October 14, 2021**. Defendant shall file any objections to the proposed judgment **on or before October 28, 2021.** Since Plaintiffs did not seek injunctive relief on their motion for summary judgment, the Court does not grant any permanent injunction at this time.

As set forth above, Judge Feuerstein terminated Plaintiffs' motion to amend the class definition with leave to renew pending determination of the summary judgment motions. (ECF No. 167.) If Cassidy still chooses to dispute the temporal limitation of the current class definition, she may renew her motion to amend the current class definition and submit a proposed joint briefing schedule for that motion. If either party requires additional discovery relating to the issue of the definition of the class, they must move, before the Magistrate Judge, to reopen, or lift the stay of, discovery for that limited purpose.

**SO ORDERED.**

Dated: September 30, 2021
       Central Islip, New York

                                                               /s/ (JMA)
                                                              JOAN M. AZRACK
                                                              UNITED STATES DISTRICT JUDGE